**[J-82-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

PENNSYLVANIA ENVIRONMENTAL
DEFENSE FOUNDATION,

                Appellant

                v.

COMMONWEALTH OF PENNSYLVANIA,
AND TOM WOLF, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF
PENNSYLVANIA,

                Appellees

: No. 65 MAP 2020
:
:
: Appeal from the Order of the
: Commonwealth Court at No. 358
: MD 2018 dated October 22, 2020.
:
: ARGUED:  December 8, 2021
:
:
:
:
:
:
:
:
:

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                              **DECIDED: August 5, 2022**

I agree with the Majority Opinion in large part: I fully join Sections III.B and III.E; I agree Pennsylvania trust law allows trustees to use trust funds to pay for reasonable costs incurred in administering the trust, *see* Majority Opinion at 16; and I agree the "'legislature's diversion of funds from the Lease Fund (and from the DCNR's exclusive control), does not, in and of itself, constitute a violation of Section 27,'" *id.* at 24, *quoting Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911, 939 (Pa. 2017) ("*PEDF II*").  But respectfully, in light of this Court's decisions in *PEDF II* and *PEDF v. Commonwealth*, 255 A.3d 289 (Pa. 2021) ("*PEDF V*"), I cannot agree that Sections 104(P) and 1601 of the General Appropriations Acts of 2017 and 2018, and Sections 1601.2-E(b) and (c) of the Fiscal Code are facially constitutional.

In *PEDF II*, we held Article I, Section 27 of the Pennsylvania Constitution "establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth⬚ is the trustee, and the people are the named beneficiaries." 161 A.3d at 931-32. We adopted this principle following the sound plurality reasoning set forth in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013):

> As trustee, the Commonwealth is a fiduciary obligated to comply with the terms of the trust and with standards governing a fiduciary's conduct. The explicit terms of the trust require the government to "conserve and maintain" the corpus of the trust. The plain meaning of the terms conserve and maintain implicates a duty to prevent and remedy the degradation, diminution, or depletion of our public natural resources. As a fiduciary, the Commonwealth has a duty to act toward the corpus of the trust — the public natural resources — with prudence, loyalty, and impartiality.

*Id.* at 932, *quoting Robinson Township*, 83 A.3d at 956-57 (quoting PA. CONST. art. I, §27).

Considering those general duties, the *PEDF II* Court held:

> Pennsylvania's environmental trust thus imposes two basic duties on the Commonwealth as the trustee. First, the Commonwealth has a duty to prohibit the degradation, diminution, and depletion of our public natural resources, whether these harms might result from direct state action or from the actions of private parties. Second, the Commonwealth must act affirmatively via legislative action to protect the environment.

*Id.* at 933 (citation omitted).

We then evaluated provisions of the Fiscal Code in light of those articulated duties.

Section 1602-E provided:

> Notwithstanding any other provision of law and except as provided in section 1603-E, no money in the fund from royalties may be expended unless appropriated or transferred to the General Fund by the General Assembly from the fund. In making appropriations, the General Assembly shall consider the adoption of an allocation to municipalities impacted by a Marcellus well.

72 P.S. §1602-E. Next, Section 1603-E allowed for a maximum of $50,000,000 to be appropriated to the Department of Conservation and Natural Resources ("DCNR"), and merely specified the DCNR "shall give preference to the operation and maintenance of

State parks and forests." 72 P.S. §1603-E. We held these provisions were facially unconstitutional because they "lack[ed] any indication that the Commonwealth is **required** to contemplate, let alone reasonably exercise, its duties as the trustee of the environmental public trust created by the Environmental Rights Amendment." *PEDF II*, 161 A.3d at 937 (emphasis added).

We further explained Section 1602-E was facially unconstitutional because it moved money to the General Fund without limitation on its use, and it "merely require[d] the General Assembly to 'consider' allocating these funds to municipalities impacted by a Marcellus well." *Id.* Section 1603-E was facially unconstitutional because it imposed a maximum of "'up to $50,000,000'" for appropriations to the DCNR from the Lease Fund and only required the DCNR to "'give preference to the operation and maintenance of State parks and forests' rather than to conservation purposes." *Id.* at 937-38, *quoting* 72 P.S. §1603-E. Thus, we reiterated, "there [was] no indication that the General Assembly considered the purposes of the public trust **or exercised reasonable care** in managing the royalties in a manner consistent with its Section 27 trustee duties." *Id.* at 938 (emphasis added). We elaborated the provisions "plainly ignore[d] the Commonwealth's constitutionally imposed fiduciary duty to manage the corpus of the environmental public trust for the benefit of the people to accomplish its purpose—conserving and maintaining the corpus by, inter alia, preventing and remedying the degradation, diminution[,] and depletion of our public natural resources[,]" because they "**permit[ted] the trustee to use trust assets for non-trust purposes**, a clear violation of the most basic of a trustee's fiduciary obligations." *Id.* (emphasis added).

Because statutes relating to the trust cannot "permit the trustee to use trust assets for non-trust purposes," such laws must plainly indicate **both** that the relevant trustee "is required to **contemplate**[ and] reasonably **exercise**" its fiduciary duties. *Id.* at 937-38

(emphasis added).  Section 1602-E was not saved by the fact it "merely require[d] the General Assembly to 'consider'" acting toward a trust purpose.  *Id.*  Mere consideration is insufficient — trustees must also affirmatively "exercise[ ] reasonable care" in administering the trust.  *See id.*  And we held Section 1603-E was likewise deficient despite the fact it required the DCNR to give preference to the operation and maintenance of State forests and parks (which, depending on the DCNR's consequent choices, **could** have resulted in — but did not require — the use of trust assets for trust purposes).  *See id.*

In *PEDF V*, we applied *PEDF II* to find two more provisions of the Fiscal Code unconstitutional.  *See* 255 A.3d at 314.  We held income generated from bonuses, rental payments, and penalty interest must be returned to the corpus of the trust.  *See id.*  Once we reached that conclusion, we determined Fiscal Code Sections 1604-E and 1605-E and Section 1912 of the Supplemental General Appropriations Act of 2009 were facially unconstitutional.  *See id.*  Those provisions simply directed the transfer of specific amounts of money from the Lease Fund to the General Fund.[1]  Thus, in both *PEDF II* and *PEDF V*, this Court struck down statutes that permitted the Commonwealth to spend trust funds without prohibiting the expenditure of trust funds for non-trust purposes.  Even

---

[1] Section 1604-E provided: "Notwithstanding section 1603-E or any other provision of law, in fiscal year 2009-2010 the amount of $60,000,000 shall be transferred from the fund to the General Fund."  72 P.S. §1604-E.  Section 1605-E similarly stated:

> (a) Fiscal year 2010-2011.--Notwithstanding section 1603-E or any other provision of law, in fiscal year 2010-2011, the amount of $180,000,000 shall be transferred from the fund to the General Fund.

> (b) Fiscal year 2014-2015.--Notwithstanding section 1603-E or any other provision of law, in fiscal year 2014-2015, the amount of $95,000,000 shall be transferred from the fund to the General Fund.

72 P.S. §1605-E.  Section 1912 likewise provided: "The sum of $143,000,000 is transferred from the Oil and Gas Lease Fund to the General Fund."  Act of Oct. 9, 2009, P.L. 779, No. 10A, §1912.

though the Commonwealth was a trustee charged with administering the trust, the statutes were not saved by the fact the Commonwealth was essentially **given the option** to act pursuant to its fiduciary duties under the legislative enactments.

The statutes at issue in the current litigation are similarly infirm. Starting with the provisions of the General Appropriations Acts of 2017 and 2018, Sections 104(P) and 1601 fail to facially indicate the General Assembly must "reasonably exercise[ ] its duties as the trustee of the environmental public trust[.]" *PEDF II*, 161 A.3d at 937. Instead, the provisions allow the appropriation of Lease Fund money to the DCNR for general operations purposes, including for expenses such as compensation, travel expenses, and purchase or rental of goods and services. *See* §§104(P), 1601, Act of July 11, 2017, P.L. 1279; §§104(P), 1601, Act of June 22, 2018, P.L. 1203. After aptly explaining that trust law generally permits trustees to incur reasonable costs in the administration of the trust, the majority holds these specific appropriations comply with Article I, Section 27 because the DCNR is the "cabinet-level advocate for our State forest and park lands, as well as other natural resources" and its "primary mission is, *inter alia*, 'to maintain, improve and preserve State parks [and] to manage State forest lands[.]'" Majority Opinion at 17, *quoting* 71 P.S. §1340.101(b). The majority contends the responsibilities in that select quotation "are indisputably in furtherance of the purposes of the Section 27 trust" and, further, "decline[s] to determine whether all of DCNR's statutory responsibilities qualify as trust purposes[.]" *Id.* at 17 & n.16. But I do dispute that assertion.[2]

---

[2] It is apparent to me that not all of the DCNR's work relates directly to Article I, Section 27 — even work done to carry out the duties the majority claims indisputably further trust purposes. *See, e.g.*, ATV Riding in State Forests, PA. DCNR, https://www.dcnr.pa.gov/Recreation/WhatToDo/ATVRiding/Pages/default.aspx (last visited July 29, 2022) (DCNR oversees use, registration, titling of Snowmobiles and ATVs); Construction Bids and Requests for Proposals for Projects and Services on State Park and Forest Lands, PA. DCNR,

The DCNR has responsibilities other than conservation and maintenance. More fully, its mission is to:

> maintain, improve and preserve State parks, to manage State forest lands to assure their long-term health, sustainability and economic use, to provide information on Pennsylvania's ecological and geologic resources and to administer grant and technical assistance programs that will benefit rivers conservation, trails and greenways, local recreation, regional heritage conservation and environmental education programs across Pennsylvania.

71 P.S. §1340.101(b). The DCNR's mission goals of economic use of state forests, recreation, and heritage conservation are not explicitly related to the trustees' Article I, Section 27 duties to conserve and maintain public natural resources. Despite the majority's failure to consider whether the DCNR only performs trust-furthering functions, that determination is critical to the facial constitutionality of these provisions. Where Sections 104(P) and 1601 provide trust assets to the DCNR for **all** of its general

---

https://www.dcnr.pa.gov/Business/ConstructionBids/Pages/default.aspx (last visited July 29, 2022) (DCNR manages construction projects in state parks and forests, including, *inter alia*, bridges, roads, sewage systems, swimming pools, campgrounds, cabins, visitor centers, and offices); Recreation Skills Education, PA. DCNR, https://www.dcnr.pa.gov/Education/RecreationSkills/Pages/default.aspx (last visited July 29, 2022) (DCNR offers workshops for training teachers in hiking, snowshoeing, and geocaching); State Park Concession Opportunities, PA. DCNR, https://www.dcnr.pa.gov/Business/StateParkConcessions/Pages/default.aspx (last visited July 29, 2022) (DCNR manages lease agreements for concession operations in state parks, including food and refreshments, watercraft rentals, bicycle rentals, restaurant operations, golf course operations, and whitewater rafting operations). We implicitly acknowledged this reality in *PEDF II* when we struck down §1603-E of the Fiscal Code, which put a cap of $50 million in allocations from the Lease Fund to the DCNR and stated "[t]he department shall give preference to the operation and maintenance of State parks and forests." While the cap was certainly part of the problem, we also took issue with the quoted language because it "require[d] DCNR to 'give preference to the operation and maintenance of State parks and forests' rather than to conservation purposes." *PEDF II*, 161 A.3d at 937-38. If all of the DCNR's duties effectuated Section 27, this language would not have been problematic.

operations, and the DCNR performs functions that **do not** further trust purposes, the statutes are facially unconstitutional because they "permit the trustee to use trust assets for non-trust purposes, a clear violation of the most basic of a trustee's fiduciary obligations." *PEDF II*, 161 A.3d at 938. The majority bypasses this issue because PEDF "presents a facial challenge to the use of trust assets for DCNR's general operations, rather than challenging DCNR's use of trust funds for specific administrative costs." Majority Opinion at 17 n.16. But *PEDF II* and *PEDF V* also involved facial challenges.

In those cases, we recognized the fact the General Assembly **could** have used the Lease Fund money for trust purposes, once it was moved to the General Fund, was not enough to save the challenged statutes. We held the text of the provisions must indicate consideration and reasonable exercise of the trustee's fiduciary duties. Similarly here, the fact the DCNR **might** use the Lease Fund money only for general operations that would further trust purposes rather than for other aspects of its mission is inadequate. Under *PEDF II*, the statutes must facially require that the funds be used only for trust purposes under Article I, Section 27. Essentially, using Lease Funds for "general operations" may be constitutional, but only if those "general operations" further trust purposes. Indeed, the majority acknowledges the possibility not all of the DCNR's functions further trust purposes. *See id.* Since Sections 104(P) and 1601 facially "permit the trustee to use trust assets for non-trust purposes," they are invalid under *PEDF II*. 161 A.3d at 938.

Section 1601.2-E(c) of the Fiscal Code is similarly flawed. That provision states:

> Money in the [Lease Fund] may only be used as provided under subsection (e) or as annually appropriated by the General Assembly. In making an appropriation from the fund, the General Assembly shall

> **consider** the Commonwealth's trustee duties under section 27 of Article
> I of the Constitution of Pennsylvania.

72 P.S. §1601.2-E(c) (emphasis added). In *PEDF II*, we held Section 1602-E was facially unconstitutional because it "merely require[d] the General Assembly to '**consider**' allocating these funds to municipalities impacted by a Marcellus well." 161 A.3d at 937 (emphasis added). Mere consideration of fiduciary duties is insufficient under *PEDF II*, yet mere consideration is all that Section 1601.2-E(c) requires. The majority attempts to distinguish *PEDF II*, stating "[w]hile one requires consideration of mandatory trustee duties imposed by Section 27, the other suggests a specific allocation of resources to one of many potentially constitutional purposes." Majority Opinion at 26. But that distinction does not address the fact that mere consideration of the trust purposes is insufficient under *PEDF II*; the trustees must also reasonably **exercise** their duties. *See* 161 A.3d at 937.[3]

The majority further "observe[s] that the language of subsection (c) seems intended to remedy the fault identified in *PEDF II*" that Section 1602-E lacked "any 'indication that the General Assembly considered the purposes of the public trust or exercised reasonable care in managing the royalties in a manner consistent with its Section 27 trustee duties.'" Majority Opinion at 26, *quoting PEDF II*, 161 A.3d at 938. The majority reasons in a footnote that "[t]he statute's arguably inarticulate use of the verb 'consider' does not negate the mandatory nature of the General Assembly's Section 27 duties." *Id.* at 27 n.21. But again, on its face, Section 1601.2-E(c) only requires the

---

[3] In her concurring opinion, Justice Donohue asserts, "[a]fter our decision in *PEDF II*, as a matter of law, Article I, Section 27 fiduciary duties are incorporated into all legislative and executive action at all levels of the Commonwealth's governance." Concurring Opinion at 8 n.3 (Donohue, J.). But our decision in *PEDF II* did not change the text of Section 27 — it explained what Section 27 means and requires. Thus, the provisions at issue now must adhere to the same Section 27 requirements as the provisions at issue in *PEDF II*.

General Assembly to consider its trustee duties, not reasonably exercise them. And, respectfully, in *PEDF II* and *PEDF V*, the mere existence of the General Assembly's trustee duties under Section 27 was not enough to save what could have then been similarly characterized as "arguably inarticulate" text. Since we deemed such language deficient in *PEDF II*, I would find Section 1601.2-E(c) facially unconstitutional.[4]

Finally, Section 1601.2-E(b) of the Fiscal Code is facially unconstitutional because it allows the General Assembly, without restriction, to commingle trust funds with its own funds and other non-trust funds. Section 1601.2-E(b) states:

> (b) **Sources.**--The following shall be deposited into the fund:
>
> (1) Rents and royalties from oil and gas leases of land owned by the Commonwealth, except rents and royalties received from game and fish lands.
>
> (2) Amounts as provided under section 5 of the act of October 8, 2012 (P.L. 1194, No. 147),[] known as the Indigenous Mineral Resources Development Act.
>
> (3) Any other money appropriated or transferred to the fund.

72 P.S. §1601.2-E(b). As the majority explains, "[a] trustee has a duty to maintain 'adequate records of the administration of the trust' and to 'keep trust property separate

---

[4] I do not suggest the General Assembly was required to "list[ ] each of the Section 27 trustee duties or quote[ ] this Court's summary of those duties[.]" Majority Opinion at 27 n.21. But in *PEDF II* and *PEDF V*, we explicitly held that in order to reasonably exercise their duties, trustees can spend money derived from trust resources to further trust purposes only. When the General Assembly allocates trust funds, its "legislative enactments [cannot] permit the trustee to use trust assets for non-trust purposes" as that would be "a clear violation of the most basic of a trustee's fiduciary obligations." *PEDF II*, 161 A.3d at 938. Thus, something more than mere "consideration" of Section 27 is required before trust funds may be used; furtherance of trust purposes must be a **condition** of the expenditure. *See id.* In my view, the General Assembly might have fulfilled this directive from *PEDF II* simply by requiring the money be spent only to further trust purposes.

from the trustee's own property.'"  Majority Opinion at 29 n.25, *quoting* 20 Pa.C.S. §7780(a), (b).  But Section 1601.2-E(b)(3) expressly permits the General Assembly to commingle trust funds with "[a]ny other money appropriated or transferred to the fund." 72 P.S. §1601.2-E(b)(3).  On its face, Section 1601.2-E(b) allows the Commonwealth to commingle its own funds with trust funds, which would violate its duties as a trustee.  *See* 20 Pa.C.S. §7780(b).  Section 1601.2-E(b) also fails to require an accounting if "[a]ny other money appropriated or transferred to the fund" is non-trust money.  *See id.* at §7780(a).  In direct contravention of the Commonwealth's duties as a trustee, the provision puts no limits on the money that can be commingled with trust money within the Lease Fund.  *See id.*; *see also* Restatement (Second) of Trusts §179 ("The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property, and, so far as it is reasonable that he should do so, to keep it separate from other property not subject to the trust, and to see that the property is designated as property of the trust.").  Thus, "there is no indication that the General Assembly considered the purposes of the public trust or exercised reasonable care in managing the [trust funds] in a manner consistent with its Section 27 trustee duties."  *PEDF II*, 161 A.3d at 938.  I would therefore find Section 1601.2-E(b) facially unconstitutional.

In her concurring opinion, Justice Donohue suggests this commingling of funds is why the General Assembly can facially permit Lease Fund money to be spent on all of DCNR's general operations.  *See* Concurring Opinion at 5-7 (Donohue, J.).  But as the saying goes, two wrongs do not make a right.  The General Assembly cannot obfuscate its fiduciary duty to prevent the spending of trust money on non-trust purposes by breaching its other fiduciary duty not to commingle funds.  And contrary to Justice Donohue's assertion that Section 1601.2-E(b)'s commingling of funds differentiates this case from *PEDF II*, this case presents an analogous scenario.  As explained in *PEDF II*,

Section 1602-E required Lease Fund money to be moved into the General Fund before it could be spent. *See PEDF II*, 161 A.3d at 921-22. Thus, Section 1602-E essentially commingled trust money with the Commonwealth's money in the General Fund, and then allowed the General Assembly to appropriate those funds without clear limitations. In fact, in *PEDF V*, we described Section 1602-E's functions as follows:

> The most significant change was Section 1602-E, which stated that no Lease Fund royalty money, with an exception discussed next, should be expended unless appropriated or transferred to the general budgetary fund by the General Assembly. Thus, **all the royalties in the Lease Fund would be transferred to a larger pool of money**, whereupon the General Assembly would allocate back to the DCNR whatever amount it saw fit.

*PEDF V*, 255 A.3d at 294 (emphasis added). Under that scheme, it was possible the General Assembly could have spent the trust funds on trust purposes entirely once they were moved to the General Fund, just as Justice Donohue now suggests it is possible that the non-trust funds commingled with the trust corpus within the Lease Fund would cover any non-trust purposes. But, of course, we found Section 1602-E facially unconstitutional in *PEDF II* because it permitted the spending of trust funds on non-trust purposes.[5] The Commonwealth cannot enact legislation facially permitting the spending of trust money on non-trust purposes simply because it first commingles the money with other funds. To hold otherwise would contradict *PEDF II* and provide the Commonwealth a perverse incentive to breach its fiduciary duty not to commingle funds.

_____

[5] Justice Donohue attempts to reframe the Court's holding in *PEDF II*, stating: "the *PEDF II* provisions authorized the General Assembly to take trust assets and appropriate them to the General Fund, where they would be clearly spent on non-trust purposes." Concurring Opinion at 6 (Donohue, J.). But *PEDF II* did not hinge on a finding the trust funds would "be clearly spent on non-trust purposes" once moved to the General Fund. *Id.* In fact, Section 1602-E required the General Assembly to consider allocating at least some of those funds to the "municipalities impacted by a Marcellus well[,]" 72 P.S. §1602-E, which very well could have encompassed trust purposes. Instead, that provision was unconstitutional because it "**permit[ted]** the trustee to use trust assets for non-trust purposes[.]" *PEDF II*, 161 A.3d at 938 (emphasis added).

In sum, the majority frames its opinion by PEDF's burden in this case: "[i]n challenging the constitutionality of duly enacted statutory provisions that are presumed to be constitutional, PEDF bears the burden of demonstrating that the provisions 'clearly, plainly, and palpably' violate the Constitution." Majority Opinion at 10, *quoting PEDF II*, 161 A.3d at 929; *see also id.* at 27 n.21 (relying on 1 Pa.C.S. §1922(3) as "providing that in interpreting legislative intent, courts may presume '[t]hat the General Assembly does not intend to violate the Constitution'"). It then finds PEDF failed to meet its burden because the Commonwealth could still — in theory — act according to its fiduciary duties under the provisions at issue. While this rationale has some appeal, we are bound by the dictates of *stare decisis*. In *PEDF II*, we held statutes are facially unconstitutional — that they "clearly, plainly, and palpably" violate Article I, Section 27 — where they "permit the trustee to use trust assets for non-trust purposes[.]" *PEDF II*, 161 A.3d at 938.[6] In *PEDF V*, we applied that premise to hold provisions that simply transferred money from the Lease Fund to the General Fund were facially unconstitutional. Like the provisions we struck down in *PEDF II* and *PEDF V*, Sections 104(P) and 1601 of the General

---

[6] Justice Donohue's extensive analysis under the "plainly legitimate sweep" standard discussed in *Clifton v. Allegheny County*, 969 A.2d 1197 (Pa. 2009), is puzzling. *See* Concurring Opinion at 6-7, 10 n.6 (Donohue, J.). In *Clifton*, this Court merely recognized that the United States Supreme Court "seems to have settled on the 'plainly legitimate sweep' standard[,]" which is more lenient than the stricter standard requiring a challenger to show "no set of circumstances exists under which the [statute] would be valid." *Clifton*, 969 A.2d at 1223 (citations omitted). The *Clifton* Court then found that even under the more lenient standard, the challenger's facial challenge failed. *See id.* at 1224. To be clear, the *Clifton* Court did not adopt the "plainly legitimate sweep" standard, and the Court has since applied the stricter "no set of circumstances" standard in evaluating facial challenges. *See Commonwealth v. Pownall*, ___A.3d ___, 2022 WL 2824741, at *15 (Pa. July 20, 2022); *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019). But since I would find the provisions here unconstitutional even under the stricter "no set of circumstances" standard, and since the majority applies the correct standard, *see* Majority Opinion at 10, an analysis of the "plainly legitimate sweep" standard is of no moment.

Appropriations Acts of 2017 and 2018 and Sections 1601.2-E(b) and (c) of the Fiscal Code lack explicit language requiring trust funds be used for trust purposes, demonstrating the General Assembly failed to consider trust purposes or exercise reasonable care in administering the trust. I would therefore hold those provisions facially unconstitutional.